Good morning, everyone. The Court of Appeals for the Federal Circuit is pleased to be holding sessions here in Houston this week as well as in Washington in our normal course. We have two panels sitting simultaneously here on the 11th floor of the courthouse. This panel will hear argument first in Appeal 1158, Automated Merchandising v. Crane. Counsel, approach the podium, please. Good morning to you. Welcome to the Court. Please proceed. May it please the Court. My name is Jamil Alibi. I represent Defendant Crane Co. This case, Your Honors, presents a preliminary injunction entered by the Court below for which all of the factors that this Court has discussed in its recent published opinions, there was no possible irreparable harm finding that could have been found. Each of the factors that this Court has addressed over the time regarding the types of harm that must be found or the factors that weigh in favor or against finding of an injunction were not possibly found here. With respect to those issues, I'd like to address the irreparable harm and then the likelihood of success on the merits that were addressed at the Court below regarding the validity of the injunction. Counsel, I would have thought that the biggest problem with the injunction was that a stay was also granted pending reexamination. It seems like that would cast a cloud over the decision to issue an injunction. As mentioned in our brief after the Court's order was on December 2nd and on December 5th, this Court entered its opinion in Procter & Gamble. And that also goes to the irreparable harm or the likelihood of success on the merits because on the one hand, the Court was finding that there was a simplification of issues and that reexamination would be beneficial and that it wanted the expert view of the PTO. But on the other hand, it was finding that this patent was sound and valid and that there were no invalidity issues for it to grapple with. Well, in other words, more to the point, the stay pending reexam shouldn't have been granted unless there was a substantial question presented by the reexam. And if there was, then that would seem to be inconsistent with issuing an injunction. To find that there was issues that supported a stay pending reexamination would absolutely undermine the finding of a likelihood of success on the merits because it would contradict the issue of the validity. It would also be problematic because if the Court entered an reexamination that could take three, four, five years, then that would put Crane at a severe disadvantage of having a reexam that lasted ad infinitum against it. But that's not what happened, right? The stay was merely pending this appeal, not pending the conclusion of the reexam proceeding. No, Your Honor. There were two different motions for stay. There was a motion for stay filed by Crane that was joined by the other defendant, Saga, in which the Court granted in the same order that it granted the preliminary injunction. And then after that, after the entry of the order granting a preliminary injunction, Crane filed a notice of appeal to this Court and requested that the District Court stay its own injunction pending this appeal. So there are two stays in place. There were stay of the other cases, correct? Sorry, Your Honor? There are other cases pending. There are five pending cases between Crane. Those cases were stay pending the reexam. Those cases were already stay pending reexam. And then your case was folded into that, as I understood it. Absolutely. This case was consolidated. The original stay pending the reexam was entered with respect to the law called the other cases. It was. As I understood it. And the timing, your case comes along and then the judge's law just rolls you in with them. So you're stay pending appeal and you're also stay pending reexam. There was two things that the Court did in the 2008 case, which is the one that's on It consolidated it with the previous four that your Honor is referring to and also decided that it should be stayed, as were those other four pending reexamination. Exactly what relief do you propose? We propose that on the merits of the injunction that it should be reversed and we also believe that to the extent the Court finds that there would be this conflict, as it did in Procter and Gamble, between the granting of a stay pending reexam and the order granting an injunction that those orders should be vacated and remanded for the Court to reconcile how those two things could stand together. I don't follow you. If we vacate the injunction, then there's no longer any alleged inconsistency between an injunction and a reexam order. That's true. If the Court decides to reach the injunction on the merits and determine that it should be reversed and vacated, then the Court could leave the stay pending reexam. The issue that I was raising is that if the Court finds that putting these two orders, granting reexamination and a stay pending reexamination along with a preliminary injunction, is something that needs to go back to the Court, which is what this Court did in Procter and Gamble. It was a different issue because there the Court effectively denied the injunction by granting the stay pending reexamination. You want us to upset the stay on the merits, I mean the injunction on the merits.  Which solves the problem. That would solve the problem. But you don't want us to remand for the district judge to do anything. If the Court believes that the Procter and Gamble issue is present here and that you need further clarification from the Court below, then you could vacate and remand for the Court to reconcile the inconsistencies. And then there would simply be another appeal here and we'd be right back where we are now. If the Court granted an injunction again, yes. You mean, if we affirm, if we say the preliminary injunction was properly entered, then we have a conflict problem. We'd still have a conflict problem if the Court affirmed the injunction. Because the stay pending reexamination would directly conflict with that idea. But I mean, if we agree with you on the merits of the appeal, then the so-called conflict problem disappears. The conflict goes away. What's the status of the reexamination? The first office action has been entered and a response has been followed by the patentee and that's the last thing that's happened. Which was, the first office action was February of this year and the response was in March. And after that there's been no further action. It's waiting for a response by the examiner at this point. What was the office action? What was the result? With respect to the 220 patent, which is the one that the Court found was infringed, the patent office rejected each of the claims as obvious on the same basis that was argued to the District Court below. Which was? That four pieces of prior art as well as the admissions made by the patent owner during other reexaminations rendered the patent obvious. And it was the pieces of prior art relating to transparent vending machines with helical coils combined with other light sensors and light curtains. What's the principal defect in the underpinnings of the decision to grant the injunction? The principal defect is that there was no showing or finding of what this Court has said is required for irreparable harm. If you look at the various factors that this Court has addressed, one of them is price erosion. Here there was no price erosion and to the contrary the evidence was that Crane was selling its machines at a higher price than what AMS was selling its machines. There was no evidence or submission regarding market share. Whether there was information about vending machines in general or these refrigerated vending machines, there was no showing whatsoever of what AMS had before and what AMS had after or what the entire market even looked like. The Court will find no evidence in the record as to with respect to these specific items. And the important issue here is that AMS is coming to this Court at the district court level and saying we understand that we have patents and we understand that we've sued Crane, but we now wish to seek an injunction against only two of Crane's machines. And Crane has been doing what we believe is infringing since 2001. I don't understand that. This patent didn't exist in 2001, right? The first action filed. You're correct. I don't understand how they can be faulted for delay when this patent was only issued a few months before the suit was brought. This patent was issued in 2008. The other patent that they raised in this case... No, but they only delayed a few months, right? Actually it's over a year because there are two patents involved. One is the 915 which was also asserted against Crane. But the injunction was based on the 220 patent, right? The injunction was based on the 220 because... When was the 220 patent issued? March 2008. And when was this injunction sought? The summer of 2008. Yeah, so only a few months, right? A few months. The other patent that was alleged against Crane was the 915 patent which issued in March of 2007. What does that have to do with anything? Because that's... The injunction wasn't based on that. But they sought relief based on that patent. They asserted that we were infringing that patent and that should be a basis for the injunction. The court found that it wasn't infringed and that's why it's not on appeal because that issue didn't reach this court. But at the court below, they were alleging that we infringed the 915 which issued in 2007. I don't understand. What does that have to do with the price? It goes to their delay, Your Honor. It goes to the fact that... The injunction is not based on the 915. But they wanted the injunction to be based on that. And they sued based on that. I think maybe if the injunction were based, they'd have an argument. But I don't see how that carries over to the other path. And it's also their contention in this case that the same vending detection system infringes all four patents which have been around since 2002 and 2003. But this is the first time they seek an injunction. So we believe the delay issue is at least going back to 2007 if it doesn't go back further than that. But putting it aside, even the delay issue, there's no price erosion. There's no evidence of loss of market share. The only evidence that... Don't you make a significant amount, or you try to make a significant amount, out of the fact that the patentee licensed the patent to everybody else? I believe that that's also a factor that weighs against granting injunctive relief here, is that each and every single competitor in this marketplace has been licensed by AMS. And they take issue with the fact that Crane has not... That's including the major competitor that your client acquired, right? AP, that's correct. And at the time that they licensed AP, they admit in the red brief at page 13 that they knew AP was going to be introducing an infringing or a competitive product to theirs. And so to the person that they complain about, the issue that they raise in this case, is that by purchasing AP and its distribution channels, Crane somehow was going to create some new irreparable harm. That irreparable harm existed in 2006 when Crane purchased AP. On likelihood of success, on the merits, your contention is that a substantial show of eventuality was made by your side on obviousness. Is that correct? That's correct, Your Honor. And what's your strongest set of references that you're arguing on 103? We believe that the Levasseur patent and the DeMissimi patent, as well as the admission made by AMS during the reexamination, that it was obvious from one of ordinary skill in the art to take industrial off-the-shelf light curtains and to put them into these vending machines. So those three pieces of information, both the admission and those other two patents, combined together show that there was an issue and that there was nothing novel about this particular invention or this change to their invention with their Venn detection system. Would you like to reserve the rest of your rebuttal time? I would like to, Your Honor. Thank you. Thank you. Mr. Burkwood. Good morning. Please proceed. Thank you, Your Honor. With response to some of the questions that were posed to my opponent, I wanted to start with those. The question regarding the reexam status, I think it was a little confusing as to what the question and answer actually was. The history of this action is complicated. The original case has been stayed since July of 2005, and that is based on two patents that were pending at that time. That Crane had asked for reexamination, actually six reexamination requests were filed. All six were granted as to the two patents. Are you challenging the stay with respect to the 220 patents or just with respect to some of the other patents? I'm challenging it with respect to all of the patents. What's your basis for challenging it with respect to the 220? Your Honor, I think what I was driving at is that if you look at the actual stay order itself, the original stay order was for the 402 and 634 patents. And Judge Bailey, when he took over the case, Judge Broadwater, who put that stay in place, passed away a number of years ago. Judge Bailey, when he extended the scope of the stay, he extended it to these two patents, but only still while the 402 and 634 patents were in reexamination. That reexamination, both of those are now terminated. Yeah, yeah, but the 220 is still in reexamination. The 220 has just started. That was my question. The 220 is in reexamination. There's an initial determination that the claims are invalid is obvious, right? Right. So what's the basis for challenging the stay with respect to the 220 patent? Well, two things, Your Honor. First, as I say, the stay was never entered pending the reexamination of the 220 patent. There's never been an order on that. There's no order staying it pending the 220? That's correct. They asked for a stay, consolidation and stay, before they filed a reexamination request. That was granted. So the only reexamination that was pending at the time it was granted was only on the 402 and the 634. So those two reexams have now terminated. All of the claims have been confirmed. I thought there was a stay pending reexamination of the 220 patent. No. Both stay orders are directed to the 634 and the 402. So what's the significance of that? The stays, by operation of the order below, already run its course. The stay was that the case would be stayed while the 402 and the 634 patents were being reexamined. The Patent Office has now confirmed all those claims. So by operation of the order, that issue is over. There was never an order staying the case pending the reexamination of the 220 patent or the 915 patent. I suspect they may ask for that. Where's the stay order in the appendix? It's the court's December 2 order at A20. If you look where it says motions to consolidate and stay, remember that motion was filed before Crane had asked for reexamination of either of the two new patents. But this is a motion. Is this the order? This is the order, the December 2 order. So what he talks about is he characterizes in this order that the stay request was based on the reexamination of the 402 and the 634. We opposed it in part because at the time they made that request, the stay had already been in place for three or four years. So if you look at A20, it summarizes what the motion was. Defendant argued the above style case should be consolidated with the consolidated cases and stayed pending the conclusion of the reexamination of the 402 and 634 patents. Are you suggesting that there's forward motion in some of these cases now? We have asked the court to lift the stay based on the termination of the two reexaminations. That doesn't answer my question. Is there ongoing litigation progress in front of the district judge as to any of these patents presently? Not at the moment, other than the motion to lift the stay by operation of the order. That's the only action that's going on at the district court level. Well, now I'm even more confused. You say there is no stay, and then you say there's a motion to lift the stay. Which is it? Well, I don't know. Maybe I didn't caption it correctly when I made my filing. But operation of the order, including this December 2nd order, the stay was only to last until the 402 and 634 patents. I think you made that point clear because you said it four times. But it seems as if the district judge thinks all of these cases, as to all of these patents, are dead in the water awaiting final action from the patent office. The final action he was waiting for has now occurred, and we've brought that. What we did is we filed a paper advising him of that and seeking leave to begin the discovery again. So it was captured as a motion to lift the stay. But by operation of the order itself, the stay automatically terminated. The other reason, Your Honor, is that you'd ask about why there shouldn't be a stay of the 220 patent. Well, I think that I read the Procter & Gamble case the opposite as the way that Crane reads it. The opposite? The opposite. They say that in this case, because there's that inconsistency, that you shouldn't have a preliminary injunction and a stay, therefore you shouldn't have either. Excuse me, you should get rid of the preliminary injunction and keep the stay. I say, you know, the problem is the preliminary injunction was issued based on the fact that the district court found irreparable harm. That should control. If there's irreparable harm going forward, there shouldn't be a stay in a case. Well, opposing counsel has just argued to us that the finding of irreparable harm had zero evidentiary basis, which I guess would mean that it's clearly erroneous and therefore can be overturned by us if we agree with that. I understand they are asking for that. But I disagree with them on that point, too. I think there was plenty of evidence. Evidence of exactly what? They say no evidence of market share loss or other things that we've recognized in prior cases as constituting irreparable harm. Their argument basically is, yes, you're losing revenue, but that's exactly what damages are designed to compensate for. So what non-revenue loss harm did you prove? What we proved, Your Honor, is that AMS created a market niche for itself. And that market niche is the combination of the patented optical Venn detection system with a fully insulated cabinet. And what happened is now we only occupy maybe 10% to 15% of the market, whereas Crane, following their acquisition of AP, they hold about 70% to 80% of the market. Who cares? The question is whether your portion has changed, not what your portion is. Right. But, Your Honor, this was all presented in front of the district court with briefing and a hearing with live testimony, and he was in the best position to measure what the competitive threat was. And what he found was that by entering that new market niche in the beginning of 2008, that that's what they were beginning to pressure to push us out of the market. In fact, we presented evidence that their whole ambition was to drive AMS out of the market. If we're out of the market, compensation ---- I don't know that the motivation of a competitor has much effect here. The question seems to be whether a form of harm that can't possibly be compensated by damages has been proven. They say there's no evidence of any form of harm other than loss of revenue, and you say there's all sorts of other harm, but I don't understand what those other harms are. Well, the other harm, Your Honor, is that we've got an established ---- and this is what the district court found. We have an established relationship with our dealers. Our dealers are how we primarily market our products throughout the country. As a result of their actions, both in acquiring AP in 2006 and introducing this new product where they provided features they didn't previously provide, they were now in every one of our dealers and putting pressure on our dealers to no longer buy from AMS. And that was the testimony that was presented at the district court. That's a consequence of their lawful acquisition of this other company? It was a lawful acquisition, although whether it comports with antitrust regulations, I don't know, but they did acquire AP. So that did change the market because AP, what happened is both companies, all three companies ---- So why can't you measure, you know, when you're all said and done, why can't you measure the amount of harm that's caused you and put a dollar sign on it? I don't think you can because, for example ---- One of the things that happened already, right off the bat ---- Isn't the real consequence loss of sales? Not just the loss of sales, Your Honor. That's the problem is that we've already lost sales. Well, what else did you prove that you suffered by way of harm other than reduced sales? What's happened is it's interfering with our ---- Did you have a witness who testified about irreparable harm? We did. What did he say? She's, well, I'm trying to get to that. The president of our company is one of the people who testified, and she testified, among other things, that the dealers were telling her that they were under pressure to stop selling AMS, and, in fact, one of those dealers terminated its relationship with AMS. I don't know that we'll ever ---- So you're under pressure not to sell. You don't sell. You lose sales. They say, well, I lost the sale to the Johnson Space Center where they have these vending machines. I lost these sales. I lost those sales. You add them up, and it's a revenue loss. It's more than a revenue loss, Your Honor. I don't know that we'll ever be able to restore our reputation, our relationship with that dealer or any of the dealers ever again. But was there any hard evidence of saying, well, the consequence of this was a loss of market share, and we can demonstrate and show what the loss of market share going forward forever would be? I didn't see that evidence. They did present evidence that their sales had declined in 2008. Sales have declined, but more than ---- other than just the revenue loss, I mean, people can have sales that decline for one reason or another. You can have a loss of market share for one reason or another. Well, I think that we maybe have not made my point strong enough that the loss of that dealer, I don't know that we'll ever be able to ---- Its name was Mountain Coin. I don't know that we'll ever be able to get back into Mountain Coin, and we're going to have to ---- Why was the dealer lost? Because for the first time, Crane was able to offer the product that its customers wanted and the reason why they were using AMS in the first place. It was a combination of the optical vent detection system with the fully insulated cabinet. Crane didn't have an effective solution prior to that, and there was testimony of Len Beckering who was a joint dealer to that effect that was presented both to the district court and included in our brief here. That's the very market that they're now pushing into, and that's why the district court found that there was threat of irreparable injury. Before you sit down, I want to ask you about probability of success on the merits. I looked at the 147 patent. This is at 1239 of the appendix, and it seems to me that this discloses an optical sensor in the vent space. Tell me why that's not true. This is at column 7, line 48. I'm sorry, what page? 1239, column 7, line 48. It says the vent... Oh, this is the Levasseur? Yeah. Your Honor, we were not the first to put a sensor in a venting machine, but what our claims require is that the sensor be positioned so as to monitor a substantially unconstrained cross-section of the vent space. Well, this says that the vent delivery may include a passage, a chute, or some other mechanism down or through which the vented products pass, and they put an optical sensor there. They suggest putting an optical sensor there, and that's what you do. You have an optical sensor in the vent space. So why is your invention not obvious over this? There was lots of art, and that was the subject, in fact, of the re-exam of the 402 and the 634 that was recently successfully completed. The issue really is where the sensor is and what is it monitoring. What the prior had was these chute systems where the products would be chuted through to get a narrow section that they had to monitor. I don't understand, but the disclosure is broader than that, isn't it? Well, it doesn't really say what it is. It says it's in a chute. Or a passageway. Or a passageway. What we're affirmatively claiming is substantially unconstrained cross-section, and Levasseur doesn't teach that. In fact, I'm not sure what it teaches because it says it's acoustic, it's optical. What do you mean by unconstrained cross-section? What our claims all require is that in a vending machine of a glass front, we don't even know that this is a glass front vending machine. It doesn't really specify that. There are other glass front vending machines than there are, right? There are. There are. So what we had is a glass front vending machine, and the area behind the glass in front of where the products are displayed, that's called the vent space in our patents. So when the products fall, ideally, as we disclose and claim, they fall directly into the product delivery area so there's nothing to interfere the delivery. That was the reason we're putting sensors in the first place, is to make sure products get to the customer. So what happens is that we didn't want to constrain that vent space at all with a chute or a passageway or any other way because we wanted the ability not to interfere with the delivery of the product but still detect when the product is falling. And so that's why the claim vent space is the way it is. And substantially unconstrained, that's key language, and it's been used from the very beginning with the patent office, and time after time, it's all been confirmed. But not in the re-exam. In the 634 and the 402 re-exam, that's already done. No, but on this patent and the re-exam, the claims were held to be obvious, right? Only in the first office action, which is basically repeated what they said in the decision to grant the re-exam, which is basically repeating Crane's position. That's where we started the last re-exam series as well. That's pretty typical. But their real argument on that re-exam, Your Honor, is not so much this but an alleged admission made back in the prosecution of the original 402 patent. There was never an admission of what they say. And, Your Honor, the one point I did want to make with regard to their validity argument on this, we're here discussing the propriety of the preliminary injunction the district court put in place. Three or four months after that, we got an office action from the patent office that the district court never had the opportunity to consider. What did the district court say about validity? The district court said that he found that they had not raised or no one had raised a substantial question of validity. Why? He reviewed all the art and determined that there was nothing that hadn't been considered previously. He seemed to go entirely on the notion that there wasn't any new art that hadn't been considered by the patent office, right? He did largely, but, Your Honor, there's a little more to that. We had a hearing on this. But that would be wrong, right? He's got an obligation to consider the validity questions based on the art that was before the patent office. And he did consider it, but it's not wrong for him to consider the presumptions that apply. Where did he address the validity issues with respect to the art that was before the patent office? He did discuss the only art that was not before the patent office that they cited was new. No, I understand that. But you said, I thought he rested on the notion that the art had been before the patent office. Now, I'm asking you, you say, no, he didn't confine himself to that. He was willing to address the art that was before the patent office and he considered a validity issue in that context. Where did he do that? He did analyze what the prior art showed. One of their main references was Toth. Starting at A25, he talks about what the crane was relying on. He mentions the Ruskin 958 patent, the Doble 196 patent. I am out of time. I'm, in fact, out of my rebuttal time, too. I don't have it in front of me. I can't find it at the moment, but I'd be happy to. I'm sorry, Your Honor. No, he did not. He said that under either that, Abbott Labs or the substantial question of validity, that either way that he didn't find that there's a substantial question of validity. I don't see that he discussed on 2728. I mean, any real discussion of the 2047 patent or the patent office, he just relies on the presumption of validity. Does that make me to do something more than that? Your Honor, there's actually a little more to the back story than that. As I was mentioning, that we had a hearing. He scheduled a hearing and he gave us three dates over a two-month period. And crane selected the latest date because that's when their expert, their technical expert, was going to be present. Well, what does that have to do with whether he made appropriate findings about the obviousness issue in light of this prior art? Well, what he found in here is that he didn't find that they had presented a persuasive case at all. I understand that. And the question is, did he do any analysis en route to that finding? And you say, yes, he did. And Judge Dyke asked, where is it? And you show pages where he identifies the patents, but he doesn't seem to ever analyze the prior art. I think he did give weight to the presumptions that apply. We all agree on that. The question is whether he did anything other than give weight to the presumption. And for that, we have to find something in what he said that shows he made an independent analysis. The thing that I was mentioning is that ultimately when it came time for the hearing, crane did not bring their technical expert, and nobody testified on the validity issues. So the only person to testify was our expert who was cross-examined, and they relied on their declarations where we had no opportunity to cross-examine. And frankly, I think that also weighed on the judge's mind in evaluating this. Are you suggesting that he has no independent obligation to examine the asserted prior art unless both sides presented witnesses? He's got the patents. He's got the prior art. No, I'm not saying that, but I'm saying that it probably was. Well, did he do it or not? He did, Your Honor. Where? Their main reference. Well, that's what I'm trying to find. We've read the opinion. I can't find any independent analysis of the prior art. Well, perhaps you could help me identify where he discusses the Toth patent, T-O-T-H. The Toth patent was the primary reference that crane was relying on in the preliminary injunction motion because, at that point, the Patent Office had rejected all the asserted claims of the 402 and the 634 patents over the Toth reference. Well, maybe you can find the portion of his opinion on which you rely and inform us at the time of your rebuttal argument. I'd be happy to, Your Honor. All right. Thank you, Mr. Berkowitz. Thank you. Mr. Reinhart. May it please the Court. My name is William Reinhart. I'm here on behalf of Sega Manufacturing, Inc. This Court should affirm the District Court's order staying the four patent infringement claims AMS asserted against Sega and two claims asserted against Crane. Is there a stay pending the reexamination of the 220? I believe there was. The motion filed by Crane was for a stay pending the reexamination of both the 915 and 220 patents. The order granted a stay, not in part. It granted it in its entirety. The Court recognized that both of those patents are in reexamination. That appears at the appendix at pages 14 and 15. That's in the District Court's order. Specifically recognized that both of those patents were in reexamination too. Now, the main argument directed toward my client Where's the order? Where's the order granting a stay? The order granting this There's been a dispute between the parties as to whether there's a stay pending the reexam of the 220. It ought to be possible to resolve that by looking at the order. Where's the order? The order is It's the December 2nd order. What page? And the citations I'm referring to were recognized that both the 915 and 220 patents are undergoing reexamination are at appendix pages 14 and 15. Well, where's the ordering clause? What page? I don't have the order page in front of me but it would appear at the end. But I guess what I'm here to say is that the main argument directed at SEGA is that the District Court abused its discretion because it failed to consider the purported stipulation that the AMS argues precludes SEGA from challenging the validity of the 402 patent. However, the District Court did recognize this argument and that appears at appendix page 21 when the court specifically stated that AMS argued that because SEGA stipulated to the validity of the 402 patent there is no reason to delay resolution of the suit between SEGA and AMS. Now regardless of the impact of that stipulation the District Court found that staying the action would possibly simplify the issues in this case because if any of the claims were confirmed the court would benefit from the USPTO's expert view. It also recognized that all four patents asserted against SEGA in this lawsuit are the subject of reexamination. Anything further? Nothing further. Thank you. Mr. Alibi. So where is the order written in this statute? A53. When it says for the foregoing reasons the court grants the defendant's motion to consolidate cases and stay you say that motion asks for a stay pending to 220. The motion is at page 984 references that the reexaminations had been filed a week earlier and there's also another order when AMS filed a motion to lift stay that was denied and that is A71 and A75 where the court references that the reexamination is pending and has been granted. So the court has multiple times referenced the reexaminations of these patents and denied multiple motions to lift the stay thus far. There was one filed for reconsideration of this order and there was one filed in the master lead case which was also denied and that's A71. Turning to the issues about the injunction I'd like to just raise three points with the court. The one point is, as we've mentioned in our brief is that the market niche that they refer to is refrigeration of these vending machines which is not patent technology. The second point is that this loss of revenue is something that they've now conceded was never tied to the Ultraflex or Fusion vendors and that's at the appendix 2966. They said that that analysis may I finish this thought, your honor? Yes. That that analysis would be done at a later point as part of the damages phase of this case. That's AMS's concession about the Ultraflex and Fusion. And the loss of this dealer is discussed on A757 by Ms. Shull in her declaration. It only says that they lost the dealer. It doesn't say that Crane had anything to do with it or that there was anything untoward. Just this dealer asked not to be listed as an AMS dealer exclusively anymore. So those were the two pieces of evidence. The loss of one customer for no reason that was given and some loss of revenue which even Ms. Shull recognized was caused by market conditions going on in the U.S. economy in 2008. Thank you. Thank you, your honor. Mr. Bergquist, you have a few minutes. Thank you, your honor. I realize I'm totally out of time, but I did want to answer the question. It was not in the area of the opinion where I thought it was. I was looking in the wrong section. If you look to A32, the judge is there describing the Toth reference and what it does. And one of the things you should understand, your honor, is that in our discussions with the judge at the preliminary injunction stage, there are two elements that over and above monitoring that substantially unconstrained cross-section that were discussed. Here he's referring to the calibration. The calibration element is an additional element, that is calibrating for ambient light so that if someone floods the glass front vendor with light from maybe a car headlight or something, that it won't accidentally trigger additional vans. And that calibration is one of the things that's found in the other claims that the court found would not establish a likelihood of success on infringement. But it doesn't seem to be addressing the validity question. Your honor, he was well aware and did discuss the Toth patent and the other prior art, because that was the subject of the hearing. But whether he put those words in this opinion, I don't think that he did. That's the final answer. But it's clear that he did evaluate what each of those references showed. So he gave a lot of consideration to that. At most, it would be an error as to what he included in this order. But going back, your honor, as to where your question was, where is there an order stay in the case based on the 220 reexamination? You won't find it, not at the pages that they indicated. He granted their motion at 8.53, and the motion seems to include a request for a stay pending the reexam of the asserted patents. He didn't. The stay that they request, if you look at that order, it only mentions that they had filed reexam requests at that point. They didn't ask for a stay based on that. And when he analyzed it in the pages that I referred you to, it was very clear that he was looking at... He decided to describe exactly why he was going to extend the stay to the 220 and 634. He said because there's already a reexamination of the 402 and 634, and they're asking for it to be extended. That is the order. I think the language of the order controls over how they might choose to characterize what their motion actually was. I didn't convince you. You're shaking your head. But if you look, that is how he described the motion. Again, if he was an heir on that, the order is the order. He says that the... It would be helpful if this question had been briefed. It wasn't. Your brief is not very clear as to what you're asking for in relation to the stay. It's not even clear from your brief what you think the scope of the stay is. And here we are at oral argument. This assumption should have been briefed. We could have considered it. Well, our request is that the stay of the case where the judge found there's irreparable harm occurring, there should never have been a stay of that. That's what Procter & Gamble says. That's this Court's decision in Procter & Gamble. And I'm over my time again. Thank you. The case is submitted.